AUTORIDAD DE FUENTES FLUVIALES DE PUERTO RICO, peticionaria, *v.* CORTE DE DISTRITO DE GUAYAMA, HON. PEDRO PÉREZ PIMENTEL, JUEZ, recurrida.

Núm. 1604.—*Sometido:* Noviembre 26, 1945.  *Resuelto:* Diciembre 10, 1945.

*C. Domínguez Rubio* y *Gabriel Guerra,* abogados de la peticionaria; *F. Prieto Azúar,* abogado del interventor, codemandado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Como resultado de un choque entre el automóvil guiado por Oscar B. Irizarry Cardel y otro automóvil propiedad de la Autoridad de Fuentes Fluviales, ésta demandó a Irizarry por daños y perjuicios ascendentes a $1,000. La Autoridad incluyó también como demandada a la Maryland Casualty Company, alegando que una póliza de seguros expedida por la compañía a nombre de Irizarry cubría dicho accidente.

Al no poderse emplazar personalmente a Irizarry en Puerto Rico, la Autoridad lo emplazó por edictos, de conformidad con una resolución de la corte. Además, la Autoridad emplazó personalmente a Irizarry en Oklahoma, donde residía a la fecha del emplazamiento. Antes de emplazársele por edictos, no se embargaron bienes de Irizarry radicados en Puerto Rico. A moción de Irizarry, quien compareció especialmente a dicho fin, la corte de distrito anuló su resolución para que se le emplazara por edictos y resolvió que no había adquirido jurisdicción sobre la persona de Irizarry. Expedimos el auto de *certiorari* a solicitud de la Autoridad.

El caso de *Pennoyer* v. *Neff,* 95 U. S. 714, resuelve que en un pleito *in personam* no puede adquirirse jurisdicción sobre un demandado no domiciliado mediante emplazamiento por edictos; bajo tales circunstancias, el único remedio era embargar bienes propiedad del demandado radicados en el Estado, lo que convertía el caso en una acción *quasi in rem.* El caso de *Pennoyer* en sus hechos envolvía un demandado no residente que fué emplazado por edictos. Pero algunas cortes, incluso ésta, en virtud del amplio dicta

hallado en el caso,(¹) emplearon similarmente amplio lenguaje al efecto de que en un pleito *in personam* un demandado que reside fuera de la jurisdicción, ya esté o no allí domiciliado, no puede ser emplazado por edictos a menos que se embarguen primeramente bienes del demandado radicados dentro del Estado. *Huete* v. *Teillard,* 17 D.P.R. 49, 53–4;(²) *Cosme* v. *Santi,* 37 D.P.R. 763, 765–66; *Wenonah Military Academy* v. *Antonsanti,* 40 D.P.R. 263, 266; *Arrarás* v. *Arzuaga,* 53 D.P.R., 713, 720–21; *De la Montanya* v. *De la Montanya,* 44 Pac. 345 (Calif. 1896).(³)

En 1940 el caso de *Milliken* v. *Meyer,* 311 U. S. 457, aclaró la situación al resolver que una ley que disponía el emplazamiento sustituto en una acción personal sobre un *domiciliado* de Wyoming fuera de dicho Estado, no infringiría la cláusula del debido procedimiento. La Autoridad trata aquí de aplicar dicha decisión, alegando que Irizarry estaba domiciliado en Puerto Rico y que, a tenor con la Regla 4(*e*) de las Reglas de Enjuiciamiento Civil y el caso de *Milliken,*

---

(¹)Véanse 95 U.S. a las páginas 722, 726; *McDonald* v. *Mabee,* 243 U.S. 90, 92; *Milliken* v. *Meyer,* 311 U.S. 457, 463; XLI Col. L. Rev. 724, 725.

(²)En el caso de *Huete,* este Tribunal, por voz de su Juez Asociado Sr. MacLeary, dijo a la pág. 53: ''. . . de acuerdo con la doctrina enunciada en el caso de *Pennoyer* v. *Neff,* que ha sido bien establecida, no puede hacerse emplazamiento alguno fuera de la isla, en el cual pueda fundarse una sentencia dictada en una acción personal . . .''

(³)Algunos estados, prediciendo la repudiación por la Corte Suprema de su dicta en el caso de *Pennoyer* en relación con los domiciliados, han permitido emplazamiento sustituto sobre éstos. (Véanse los casos citados en el escolio 6, 14 So. Calif. L. Rev. 488; escolio 26, Dodd, *Jurisdiction in Personal Actions,* 23 Ill. L. Rev. 427, 435; Burdock, *Service As a Requirement of Due Process in Actions In Personam,* 20 Mich. L. Rev. 422, 429–31). En Puerto Rico nunca ha habido una resolución escueta, tal como se distingue del lenguaje, en una forma u otra; esta Corte nunca ha determinado si el domicilio aquí varía la regla. En los casos de *Arrarás* y de *Cosme* aparentemente los hechos eran que los demandados estaban domiciliados en España; en los casos de *Huete* y de *Wenonah* las opiniones simplemente dicen que los demandados estaban fuera de la isla. Pero ninguno de nuestros casos discute la distinción entre domiciliados y no residentes a los fines de emplazamiento sustituto, si bien su lenguaje, como hemos visto, es lo suficientemente amplio para prohibir en acciones personales el emplazamiento sustituto sobre personas en ambas categorías.

Irizarry fué emplazado por edictos debidamente, no obstante la ausencia de un embargo anterior. Al considerar este problema, asumiremos, sin decidirlo, que Irizarry había retenido su domicilio en Puerto Rico, si bien estaba residiendo en Oklahoma cuando se le emplazó.[4]

Si el artículo 93, inciso 6, y el artículo 94 del Código de Enjuiciamiento Civil, no se hubieran cambiado, quizás podría argüirse que eran lo suficientemente amplios para autorizar el emplazamiento, sin efectuar embargo alguno, sobre una persona domiciliada aquí pero ausente de Puerto Rico cuando se le quiso emplazar.[5] Pero en vista de las insinuaciones del caso de *Pennoyer* v. *Neff* al efecto de que no era posible admitir el emplazamiento sustituto, aún sobre domiciliados, sin un embargo anterior de sus bienes, esta Corte, lo mismo que otras, con anterioridad al caso de *Milliken,* le había dado a los artículos 93 y 94 una interpretación que algunos creyeron entonces que era necesaria para que fueran constitucionales dichos artículos; vg. que el emplazamiento sustituto tenía que ensamblarse con un embargo de bienes en todos los pleitos *in personam.*[6]

Finalmente el caso de *Milliken* aclaró el punto de que como cuestión de debido procedimiento no hay requisito alguno que exija que el emplazamiento personal debe hacerse dentro de un Estado en una acción personal contra *domiciliados* del Estado. Los artículos 93 y 94, por tanto, no de-

[4] En reconsideración, la corte de distrito resolvió que Irizarry estaba domiciliado en Oklahoma. Pero sobre esta cuestión de hecho, no se celebró vista alguna, y por tanto la corte de distrito no estaba autorizada para llegar a esta conclusión. Sin embargo, sería fútil devolver el caso para que se resuelva la cuestión del domicilio en caso de que concluyamos que el domicilio de Irizarry no cambiaría la regla aquí.

[5] Esta contención en verdad se presenta con bastante acierto en un comentario al caso de *Milliken* en 14 So. Calif. L. Rev. 488, en relación con la ley de California que, en cuanto al punto ante nos, todavía contiene algunas disposiciones sustancialmente similares a los artículos 93 y 94.

[6] Debe notarse que esta regla restrictiva no se ha aplicado a casos no estrictamente *in personam*—por ejemplo, una acción de divorcio la cual envuelve la determinación del *status* de las partes. Véase Anotación en 147 A.L.R. 673.

ben ya interpretarse limitadamente en el sentido de que sólo se aplican a casos donde se haya efectuado previamente un embargo, con miras a protegerlos contra ataques a su constitucionalidad. Y, echando a un lado la anticuada objeción constitucional, estaríamos obligados a determinar si el admitido amplio lenguaje de los artículos 93 y 94 de hecho establecieron un plan estatutario de emplazamiento sustituto en acciones personales contra nuestros domiciliados sin requisito alguno de embargo previo de bienes de haber permanecido inalterados estos artículos. Sin embargo, nunca llegamos a esta cuestión, toda vez que este Tribunal, al promulgar la Regla 4(d) y (e) de las Reglas de Enjuiciamiento Civil, si bien adoptó sustancialmente las disposiciones de los artículos 93 y 94,(7) añadió lo siguiente, que pasaría a ver el último párrafo del inciso 4(e):

"En los casos en que de acuerdo con la ley se requiera un embargo de bienes del demandado para que la corte adquiera jurisdicción, no se ordenará la publicación mientras no se hubiere trabado dicho embargo y se una a los autos constancia de ello, debiendo notificarse el embargo trabado al demando en el mismo edicto en el que se publique la citación, y por correo, cuando de acuerdo con esta regla se le envíe copia del emplazamiento y de la demanda presentada."

Al insertar este inciso, con su cláusula introductora "En los casos en que de acuerdo con la ley se requiera un embargo de bienes del demandado para que la corte adquiera jurisdicción . . . ", al final de la Regla 4(e), le dimos fuerza de ley estatutaria al lenguaje de nuestros casos anteriores, al efecto de que un embargo de bienes en Puerto Rico era en

---

(7)La Regla 4(d) dispone que "el diligenciamiento se hará . . . A un individuo . . . entregándole personalmente copia del emplazamiento y de la demanda. . . .". La Regla 4(e) dispone que "Cuando la persona que deba ser emplazada resida fuera de la Isla, o se hubiere ausentado de ella, o si después de la debida diligencia no pudiere ser encontrada en la Isla, o se ocultare para que no pudiera ser emplazada, o cuando se ignorare su domicilio . . . la corte . . . puede dictar una orden disponiendo que el emplazamiento se haga por medio de edictos."

todos los casos condición precedente al emplazamiento sustituto en una acción personal. Claro es que, bajo el caso de *Milliken,* tal resultado no es constitucionalmente necesario en cuanto a nuestros domiciliados. Pero habiendo incorporado nuestra jurisprudencia anterior y su lenguaje en una regla de enjuiciamiento que, sustituyendo los artículos 93 y 94, tiene fuerza de ley estatutaria (Ley núm. 9, Leyes de P. R., 1941, (1) pág. 331), el único método disponible actualmente para aprovechar la doctrina establecida en el caso de *Milliken* sería cambiar nuestras Reglas. Sería quizás aconsejable enmendar la Regla 4(e) y adoptar una regla similar al estatuto de Wyoming. Pero para tomar tal acción tendríamos que atenernos al procedimiento provisto para ello en la Ley núm. 9. En el caso ante nos, estamos constreñidos por la Regla 4(e), tal cual lee hoy: el emplazamiento por edictos, aún para nuestros domiciliados, exige todavía un anterior embargo de bienes en Puerto Rico en una acción *in personam.*

■ La Autoridad también alega que se adquirió jurisdicción sobre Irizarry en virtud del emplazamiento personal en Oklahoma, lo que demuestra su conocimiento efectivo del pleito. Pero el conocimiento efectivo de un pleito no confiere jurisdicción sobre la persona de una de las partes del pleito; es necesario que se haga el emplazamiento de conformidad con los términos específicos de un estatuto válido. *Matos* v. *Agraít, Juez,* 59 D.P.R. 291, 294–5; *Piggly-Wiggly Georgia Co.* v. *May Investing Corp.,* 6 S. E.2d 579, 580 (Ga., 1939); *McCoy* v. *Hickman,* 15 A.2d 427 (Del., 1940).

■ De la misma manera, no hubo renuncia del emplazamiento, o sometimiento a la jurisdicción, según alega la Autoridad, al Irizarry simplemente firmar un acuse de recibo del emplazamiento personal en Oklahoma. *Lawton* v. *Porto Rico Fruit Exchange,* 42 D.P.R. 291, 297–8, citado por la peticionaria, resuelve únicamente que bajo el artículo 97, inciso 4, Código de Enjuiciamiento Civil, puede establecerse

prueba del emplazamiento por "la aceptación por escrito de un demandado". Pero aquí no hay problema sobre prueba del emplazamiento—indudablemente Irizarry fué emplazado personalmente en Oklahoma. La dificultad estriba en que no tenemos estatuto que disponga que bajo las circunstancias de este caso el emplazamiento personal en Oklahoma confirió a nuestras cortes de jurisdicción personal sobre Irizarry. Y nada hay en el acuse de recibo del emplazamiento en Oklahoma firmado por Irizarry que pueda interpretarse razonablemente como una renuncia del requisito de que se haga un emplazamiento válido.

▮▮ La Autoridad también sostiene que ésta es una acción *quasi in rem* más bien que una acción personal. Su teoría es que, en vista de la sección 175 de la Ley de Seguros,([8]) la inclusión de la compañía aseguradora, sin más, opera como un embargo en efecto legal del interés de Irizarry en la póliza. No ganaríamos gran cosa examinando las ramificaciones de los casos citados por la peticionaria procedentes de otros estados y que surgieron bajo disposiciones estatutarias específicas. Nuestros estatutos son claros: Para que exista un embargo, deben darse los pasos formales exigidos por la ley, Ley Para Asegurar la Efectividad de Sentencias, Estatutos Revisados y Códigos de Puerto Rico, 1941, págs. 775–6;([9]) y subsiguientemente, debe hacerse

---

([8])La sección 175 (Ley núm. 66, Leyes de Puerto Rico, 1921 (pág. 523), según fué enmendada por la Ley núm. 19, Leyes de Puerto Rico, 1929 (pág. 161)), dice como sigue: "Será ilegal toda cláusula en un contrato de seguro que impida al asegurado el derecho de reclamar en los tribunales de justicia, en cualquier momento después de ocurrido el accidente contra el cual se hizo el seguro, el importe de cualquier pérdida sufrida y que hubiere sido objeto de dicho seguro. Cuando el causante de los daños estuviere asegurado contra el accidente que produjo la pérdida o los daños y en el caso en que una póliza de seguro se hubiere expedido para beneficiar a un tercero, la acción para reclamar la indemnización que proceda, podrá presentarse conjuntamente contra el asegurado y la compañía aseguradora. El tribunal determinará no sólo la responsabilidad de la compañía, sino también el alcance de la pérdida."

([9])Véase también el artículo 246, Código de Enjuiciamiento Civil, ed. 1933, cuyas disposiciones hemos resuelto son también "aplicables a los embargos para asegurar la efectividad de una sentencia". *Sierra* v. *Vieta,* 56 D.P.R. 224, 232.

el emplazamiento por edictos conteniendo éste notificación expresa de que se ha efectuado el embargo, Regla 4(*e*). Toda vez que ninguno de estos hechos ocurrió en este caso, no podemos convenir con la peticionaria que la mera inclusión de la demandada bajo la sección 175 resulta en efecto legal en un embargo de la póliza de Irizarry y convierte el caso en una acción *quasi in rem*, justificando con ello se emplazara a Irizarry por edictos.([10])

En el récord también hay una moción de la Autoridad para que se traiga a Irizarry a este caso mediante embargo formal de su interés en la póliza de seguros que tiene con la Maryland Casualty Company. Las partes han argumentado considerablemente (1) si el interés que tiene Irizarry en la póliza está sujeto a embargo bajo nuestras leyes; y (2) si una orden posterior para que se emplace por edictos con el fin de traer a Irizarry al caso podría válidamente basarse en tal embargo. La corte de distrito nunca resolvió dicha moción; y en su consecuencia, no se ha dictado tal orden posterior de emplazamiento por edictos. Por tanto, la cuestión no está todavía ante nos. Cuando devolvamos el caso la corte inferior tendrá que examinar y considerar dicho punto.

*El auto de certiorari será anulado.*

---

([10])*Cf. Sabater* v. *The Union Central Life Insurance Co.*, 41 D.P.R. 241, 245. *Pennington* v. *Fourth National Bank of Cincinnati*, Ohio, 243 U.S. 269, citado por la Autoridad, no es aplicable. Allí se resolvió que un *injunction* obtenido por el demandante impidiendo que el deudor pagara cierto dinero que se le debía al acreedor demandado, era "un embargo tan efectivo como el embargo corriente. . ." (pág. 272). Asumiendo, sin decidirlo, que bajo nuestros estatutos de embargo así lo resolviéramos, aquí un injunction o un remedio similar ni se solicitó ni se concedió.